May it please the Court, David L. Rose for the Plaintiff's Appellants. May it please the Court, I'd like to start by quoting what I think is the language that has not been adequately identified in the briefs and to the extent that we didn't do that, I apologize in advance. I direct the attention of the Court to the declaration, the addendum to the declaration of Dr. Hammermesh, the expert for the plaintiffs, and goes to pages 8 and 9 thereof, and it's EX 1129 and EX 1130. He notes that, quote, for short-term workers to firework, these talk about a national sample. For short-term workers to fire rates are lower among workers age 80 plus compared to those under 40. At FedEx in the years 2006, the opposite was true. And he says something very similar to that. He says on the next page, paragraph 3, fire rates in 2002 to 2006 of full-time FedEx couriers age 40 and over exceeded those of full-time couriers under age 40, independent of years of tenure. The opposite is true of the largest, most reliable national sample. So the fact is, in the record, support for determination that there was a statistically significant adverse impact against workers over 40 in firing. But what was the policy that was having this impact? It's not a named or identified policy. It is a practice, maybe a better phrase or word to describe it. It's like the practice in Teamsters, which was not to promote blacks beyond the city driver job. They were not to be promoted to the truck driver jobs. It's similar. It's an unnamed. It's purposeful discrimination, so it doesn't have to be under disparate impact. It's a traditional disparate impact standard for intentional discrimination. But in the case you mentioned, the policy would be not to promote African Americans, correct? Yes. So are you saying, then, that there was a policy here simply not to disfavor people over 40? Well, yes, but it's – yes, it is, but it's also – and that's the comparison that's made here. But there's particularly strong evidence that it's not to retain anybody after a certain age, and they have almost no – in fact, it's zero percent. It's like four one-hundredths of one percent of employees who are between 60 and 64. We're talking about – we're not talking about all – we're talking about couriers? Couriers. Just about couriers. Right. These are the people who drive? Yes. They fricken wear shorts. They wear their uniform. They're like the – pardon me – UPS drivers who also pick up. Right. And they're driving in Southern California? Yes. Well, these are driving in various parts of the country. The first three named plaintiffs are – I'm sorry – Kuhiki and Contreras and Frank Martinez drive in Southern California. Miss Mitchell comes from Utah and drove – she comes from California, but she – and she was employed in California, but her employment at issue is with FedEx, and it's in the Utah – I'm sorry, Salt Lake City area, not in the city. Now, on the individual disparate impact claim, the district court had a different reason for denying the class certification. But on the individual disparate impact case, the district court said the flaw was that there was no specific business practice alleged that had caused the alleged disparate impact. And that's clearly a requirement that there has to be articulated, this is the business practice that disparately impacted a protected class of people. Now, when Judge Schroeder said, well, what was the – or I guess Judge Sedgwick said, what was the business practice, and you didn't identify one, did you identify one to the district court? Not one by name for the same reason. Let me just say that under Title VII as amended, we're certainly in the situation that's described in K-3, I think it is, that if you can't – if there's a series of things done together and you can't isolate which specific one because of the way the employer keeps records or for other reasons, you're allowed to address the bundle of practices or procedures under Title VII. Now, that's there by statute because the court had ruled – the Supreme Court had ruled to the contrary. So it is like that. It's our – and there was no specific provision in Title – there is no specific analog to the 91 amendments to Title VII in the ADEA. Well, do your named plaintiffs claim that they were terminated for a specific reason that was pretextual? Yes. And what is the reason? Well, Ms. Mitchell is much easier to talk about because what FedEx did with her was overt, and because it's highly relevant to the quotation I just made from Dr. Hammermich's report. If he's correct and there is a practice overall that – Well, Mitchell was the one who was terminated for entering false information about a package, and the district court said that that was FedEx's legitimate nondiscriminatory reason and that there wasn't evidence showing that that was pretextual. So that's how the district court resolved the Mitchell claim. Well, that's the way he did it on – if that finding had been made by a jury after a trial, we would not be in a position to object. Let me just say, she testified and the defendant admits that what she did was unintentional. She said, I didn't intend to do that, and on page 37 or 38 of the brief of FedEx, FedEx recognizes that that's what's said. However, there – I don't see how that goes to whether FedEx had a legitimate nondiscriminatory reason. I mean, she's not arguing that she didn't enter the false information, whether she intended it or not. Well, she – So that's – even if FedEx was wrong or maybe was not – was heartless in firing her if it was unintentional, it's still a reason not connected with her age. Well, their own policies in writing say it has to be deliberate. There has to be a – look, couriers enter dozens of deliveries every day. Hundreds, many of them, I think, every week. I don't have an exact number, and I can't point to them. But a lot of packages. And they make errors. And – So let's say FedEx was wrong, and, in fact, they should have found that it was unintentional. But what evidence did she produce that that error that FedEx made in firing her was just a cover-up for discrimination on the basis of age? That's what the district court didn't define. Let me tell you what it is. She was warned by her manager that she was – and it's in the addendum that's, I think, attached to this excerpt. So this is the last thing. There's quite a bit of information about her there. But her immediate manager told her some weeks before this happened that your boss is watching you. You better watch out. And then when the boss – I'm sorry. She said and also asked, do you want to – are you sure you want to stay here? And she was so surprised that she thought he was joking is the word she used, I believe. And it's our position that this was a setup, and that supports the possibility that this was a setup. Not on account of age. Well, it would be on account of age if it weren't for the piece that I read you earlier, which is terminations, firings, are statistically – there's a statistically large enough disparity between older workers as compared to younger workers in the organization at large. And our position is, in short, that that's what FedEx did. When somebody got to be within 10 years or so of the magic of age 55 and 30 years of service or even 20 years of service, and that's 25 years of – when they got 25 years of service and they were going to be in the ballpark of 55 or more, their tendency was to terminate them. And there are targets not only in Utah, but if we had the 85-plus other employees who were dismissed from this action by the district court, it would be easier to identify what others are there. There's a gentleman named Larry Mangiello, who comes to my mind, that's having reached 60 and then getting fired before he vested in a shorter period of time, even though he was doing very excellent work. And it wasn't as if Ms. Mitchell had ever had any problems before. She got kudos every few years. She got, I think, two in 03 and one in 04. She was a very good driver. This is not to say that she shouldn't have been admonished or given a day off or something. She made a mistake. She thought she actually had delivered it, so she entered the delivery code because it wasn't on her truck. Somehow it got left somewhere else, and it turned up in a few days. There was no complaint by the customer. I can't give you the number, but we have a place where we're supposed to record complaints, and there is no written complaint. Do you allege that younger people did the same thing or not? Yes, exactly. And she identified two of them in her testimony. Those weren't ones who had falsified information, right? They had falsified. They had entered a wrong code. She says what she did was enter the code she thought was right and that her error was unintentional. And I think a jury could believe that. And so I do think that's a matter for defense, particularly after the decision in Meacham v. Knowles, where the burden of showing a justification is not on the plaintiff. It's on the employer to show that it wasn't the general practice, that we're alleging this is one of the ways the general practice carries out. Meacham says there's a burden of not only production, as in Title VII, but under the ADEA, there's a burden of persuasion. But don't you first have to persuade us that the trial court was wrong in finding you didn't make out a prima facie case? Yeah, but she made out a prima facie case. I think you need to stick to that rather than going on to Meacham. Well, all right. She made out a prima facie case. She was the second oldest. She was the second most experienced and I think the second oldest courier in her station, out of 25 or 35 or even more. I don't know the exact number. She had very good records. She had no reason to cheat. There was no need to lay people off. This wasn't a layoff. They were hiring people every year, and for many years they were adding couriers. There's always a lot of turnover, so they had many hires every year. So there is a prima facie case. She's in the protected category. She was harmed and an inference of discrimination can be made from this evidence that she's a member of a group that was harmed and she was harmed in precisely the same way that Dr. Hammermesh was talking about. So it's the burden. So we think we've made the burden and supported it a little bit more and that the burden under Meacham is, after the prima facie case, is to show a reasonable factor other than age. Right. You've used your time. Thank you. Thank you. Your Honor, may I please report Edward Afton for Federal Express Corporation to address the two decisions that should be affirmed by this Court. First, the denial of class certification, and then second, the order granting summary judgment for all the main claims. Addressing the first order, first, the order denying class certification, that should be reviewed under an abuse of discretion standard. This Court should reverse the order only if the Court made a omitted material fact incorrectly or relied upon an improper factor or relied on the proper factors but made clear a judgment. I think the record is clear that Judge Carter made none of those. None of those situations fit. The district court relied on a test from out of circuit. We don't have any rule, right, about how to determine whether the proposed class is similarly situated for purposes of ADA? That's exactly correct, Your Honor. The first step under the ADA and the collective action under 216 under the Fair Labor Standards Act is to decide whether the plan is similarly situated. And the Ninth Circuit has not explicitly set out the criteria for that. So isn't our first obligation to figure out whether the district court applied the correct legal standard? I think that's true. The district courts in this circuit almost uniformly, in fact, I haven't, I did not find a case that, or report a case that came out and used other factors. Well, you want us to reverse? No. I don't. The district courts uniformly use the three factors from Thiessen versus the general electric factor out of the Tenth Circuit. I've not found another case that used any other, any uniform. So are you asking us to adopt that as the Ninth Circuit test? I'm trying to decide whether or not the Court has to reach that. Do we have to reach that? I'm not sure. I'm not sure that the Court has to. Isn't it correct that you've both assumed that's the correct test? Both sides here assume it. So we don't have any really serious briefing about whether that test is good, bad, or indifferent. Isn't that right? I think that's also a correct statement, Your Honor. And Federal Express has no problem with the three-factor test set forth in Thiessen,  And in this case, it worked well in the analysis. But it's true. There's no common what's the simplest way to deal with this in your view? To deal with this? Yeah. To deal with this case. I think it's inescapable that the district court has to decide whether it's so much situated and that this Court has to decide that there was no use in discretion from the district judge making that determination that the plaintiffs in this case were not so much situated. So therefore, maybe there does need to be a test in order to review. Well, what is the factor common to all of the plaintiffs? That they work for Federal Express. That is virtually the only one. Well, that's certainly not something that makes them similarly situated for purposes of class action, is it? No, it's not. The judge, Judge Carter went through at least five factors to show whether they were similarly situated. He did it underneath the first thesis criteria, whether there were factual and disparate employment settings. I think that the second two thesis factors, the other fairness and procedural considerations and whether there were individualized offenses, to me, they actually flow from the first criteria, which is whether there were disparate factual and employment settings. I think that criteria, frankly, drives the entire analysis of whether or not the plaintiffs in a collective action are similarly situated. Judge Carter went through and noted the different statuses, whether some were active, some were retired, some had quit, some were on leave. They were all over the place. Thirteen didn't even fit within class as proposed. He noted that there were different employment actions, some alleged reduced hours, some alleged terminations, general harassment. There were different policies involved. There's no common element that would make the employer liable to them for wrongful termination, other than the fact that they are all over 40 and they were all terminated or they're no longer working for them or what. That's not even true. That's not even true. They all worked. They all worked during the class period, worked for Congress, whether they do now or continue to. But the single policy isn't set forth under Thiessen really as a denoted factor. And I think that is important. I know the Court has touched on it already. What is the single policy that is the cause of what is alleged to be the disparate impact? And that's not present here. And I think that probably is a large factor in whether deciding whether these plaintiffs are somewhere situated, whether it's a single policy or plan that the plaintiffs can point to and say this policy, this plan is what created what they alleged to be a statistical disparity. I don't want to belabor it, but I will note that in this case there is no statistical disparity. The plaintiffs started on a theory that FedEx either fired or made it quit somehow people over 40 more than younger, and Plaintiff's own experts' numbers show that that's not true, that couriers under 40 were fired at a higher rate than couriers over 40, and couriers under 40 quit at a higher rate than couriers over 40. So there is no statistical disparity. The demographics that Plaintiff then falls back on are curious, but they certainly don't have any causation. They don't have any link to a single plan or policy that anyone can come up with. So I won't go into the second and the third of these factors. They are there, and Judge Carr did lay them out in the order, and we stand by that in our briefs. But the single plan or policy, if this Court is going to take up and adopt a policy, a at least as it goes to the ADA, I think a single policy or plan should be part of that component. Moving on to the summary judgment rulings, I will look at Mitchell first because she is the only one of the four that was terminated, and the reality is that she made a deliberate falsification in FedEx delivery records. And I know that any judge I talk to will say that these are harsh policies, and in fact they are. FedEx has very strict policies about our delivery because it absolutely has to be there for night, and all throughout the line, every little detail matters. So the net result of this entry, whether it was deliberate, innocent, was that the package got left someplace. Is that what happened or what happened? The package was lost. It was eventually found in a relatively short order, but it was lost. And that is the commonality between the two younger couriers and Ms. Mitchell. They all lost their packages. But the two younger couriers went to the managers, as they were supposed to do, and said, I lost my package. And they were disciplined at a much lower level. In fact, it's not even officially disciplined at FedEx. It's a notation in the record. You lost your package. Make sure you don't do it again. Now, opposing counsel says that they put in misinformation. They put in the wrong numbers. You're saying the record doesn't show that? That is not. That is not. That is an incorrect statement on the record. Judge Carr set forth what the notation is on those two younger couriers and notes that you lost a package. Where Ms. Mitchell went wrong is the cover-up. The cover-up is often worse than the crime. And what she did was say to herself, I don't have this package. I didn't make the notation when I should have that I delivered it. So, therefore, I must have. And she noted that it had been delivered. The reason that that's so important at FedEx is because a customer can get onto the Internet and look at the records and shows what happened. And what she's doing by doing that is making a misrepresentation to our customers that it was, in fact, delivered when it wasn't and that she did not know it was. That's why it's important to FedEx. That's why it is a determinable offense. And that's how they apply. The court made a good point in our argument that that's reasonable and jurors don't have to agree with that and the judge doesn't have to agree with that, but that is a policy that we have and we apply and does not infer any sort of discrimination, whether age or otherwise. Unless the Court had anything further? There appear to be any. Thank you. Thank you. You have used your time. Are there any further questions of the panel? No. Thank you. You've used your time. Thank you. We will review the record carefully. The case just argued is submitted for decision, and we will hear the next case, which is Palm Wonderful v. Purely Juice, Inc.
judges: Sedwick, Schroeder, Ikuta